UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ZULA M. WELCH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 1:13-cv-00103-JMS-DKL |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Zula Mae Welch applied for supplemental security income ("SSI") from the Social Security Administration ("SSA") on January 13, 2009, alleging a disability onset date of June 1, 2008. After a series of administrative proceedings and appeals, including a hearing on May 26, 2010, before Administrative Law Judge Bryan Bernstein, ALJ Bernstein issued a finding on November 25, 2010, that Ms. Welch was not entitled to SSI. On April 5, 2012, the Appeals Council granted Ms. Welch's request for review and remanded the case to ALJ Steven Neary (the "ALJ"). The ALJ held a hearing on July 24, 2012, and again determined that Ms. Welch was not entitled to receive SSI. [Filing No. 14-2 at 10-18.] The Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Ms. Welch has filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review her denial of benefits. [Filing No. 1.]

# I. Background

Ms. Welch was sixty years old as of her onset date. [Filing No. 14-6 at 2.] Her previous work involved inspecting, stacking, and packing tortillas for shipment. [Filing No. 14-2 at 35.] Ms. Welch claims she became disabled as of June 1, 2008, with a variety of physical and mental impairments that will be discussed as necessary below.[1] [Filing No. 14-2 at 34.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on August 22, 2012. [Filing No. 14-2 at 10-18.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Welch had not engaged in substantial gainful activity[2] after the alleged disability onset date. While she did some work after the onset date, it was only for a few days, and the disability pay she received after the onset date is not disqualifying because it was not paid in remuneration for work activity. [Filing No. 14-2 at 12.]

- At Step Two, the ALJ found that Ms. Welch suffered from the severe impairments of obstructive sleep apnea, high blood pressure, fibromyalgia, diabetes mellitus, degenerative changes in her left shoulder and cervical and thoracic spine, obesity, and bilateral hand problems. [Filing No. 14-2 at 12.]

- At Step Three, the ALJ found that Ms. Welch did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No.

---

[1] Ms. Welch detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts. Because the facts implicate sensitive and otherwise confidential information concerning Ms. Welch, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

14-2 at 14.] The ALJ concluded that Ms. Welch had the residual functional capacity ("RFC") to perform "light work" with the following limitations: "[S]he is not able to work around hazards, such as heights or operating moving machinery. She is only occasionally able to perform postural movements, such as climbing, balancing, stooping, kneeling, crouching, and crawling. She also cannot do any forceful gripping, twisting, or turning with her left hand." [Filing No. 14-2 at 14.]

- At Step Four, the ALJ found that Ms. Welch was capable of performing her past relevant work as an inspector as it is generally performed in the national economy. [Filing No. 14-2 at 18.] A claimant who has the RFC to do her past relevant work is not considered disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

- Given the ALJ's finding that Ms. Welch could do her past relevant work, he did not proceed to Step Five.

Based on these findings, the ALJ concluded that Ms. Welch was not disabled. [Filing No. 14-2 at 18.] Ms. Welch requested that the Appeals Council review the ALJ's decision, but on November 29, 2012, the Council denied that request. [Filing No. 14-2 at 2.] That decision is the final decision of the Commissioner for purposes of judicial review.

## II. Standard of Review

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must

afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant . . . currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment . . . one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, . . . can [she] perform h[er] past relevant work, and (5) is the claimant . . . capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The

burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

### III. Discussion

Ms. Welch raises three main arguments on appeal: first, that the ALJ failed to conduct a proper analysis of Ms. Welch's past relevant work, [Filing No. 21 at 19-23]; second, that the ALJ failed to properly determine whether Ms. Welch has a mental impairment and failed to incorporate any such impairment into his assessment of her RFC, [Filing No. 21 at 23-27]; and third, that the ALJ did not give proper weight to Ms. Welch's treating physician's opinion and improperly discounted Ms. Welch's credibility, [Filing No. 21 at 27-29].

**A. Past Relevant Work**

The ALJ's opinion only dedicates two sentences to an analysis of Ms. Welch's ability to do her past relevant work:

> In comparing the claimant's residual functional capacity with the demands of her past relevant work as an inspector, the undersigned finds that the claimant is able to perform it as it is generally performed in the national economy. This is consistent with the testimony of the impartial vocational expert, which the undersigned finds to be reasonable.

[Filing No. 14-2 at 18.]

Ms. Welch argues that remand is appropriate in this case because the ALJ failed to fully assess the duties of her previous job and to consider whether she could perform those duties with her limitations. [Filing No. 21 at 20.]

To determine whether the claimant is physically capable of returning to her former job, the ALJ must ascertain the demands of that work in relation to claimant's present physical capacities. 20 C.F.R. §§ 404.1520(e); 416.920(e); *Novak v. Barnhart*, 180 F. Supp. 2d 990, 996-97 (E.D. Wis. 2001) (citing *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984)). Having

5

ascertained such information, the ALJ "must list the specific physical requirements of the previous job." *Novak*, 180 F. Supp. 2d at 997 (citing *Nolen v. Sullivan,* 939 F.2d 516, 518 (7th Cir. 1991)). Then, the ALJ must give "careful consideration" to "the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her past relevant work to determine whether the individual can still do that work." *Novak*, 180 F. Supp. 2d at 997(citing SSR 82-62). The ALJ's determination about the claimant's ability to perform his or her past work has "far-reaching implications and must be developed and explained fully in the disability decision." *Id.* Therefore, "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.* When an ALJ fails to make this determination, remand is appropriate. *See Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004).

According to Ms. Welch, a thorough analysis would have shown she is unable to return to her previous job. However, as the Commissioner correctly points out, the ALJ did not find that Ms. Welch could return to the job of an inspector *as she actually performed* it but, instead, as it is *generally performed* in the national economy. [Filing No. 14-2 at 18.] Thus, the question is whether substantial evidence exists to support the ALJ's conclusion that Ms. Welch could perform her past relevant work as an inspector as it is generally performed in the national economy. The ALJ's opinion gives no insight into the basis for his conclusion other than to say that his conclusion is "consistent with the testimony of the impartial vocational expert, which [he] finds to be reasonable." [Filing No. 14-2 at 18.]

The Court finds both the ALJ's questions to the vocational expert ("VE") Micha Daoud and the VE's responses to be unclear and unreliable. Relevant portions of the testimony are as follows:

> ALJ: Assume, if you will, an individual 64 years of age with a high school education and the past work history that you've summarized for us. Assume that

individual is limited to work at the light exertional level, is further limited to occupations which do not require working at unprotected heights or operating hazardous moving machinery. Assume further that this individual is limited to occupations which did not require firm gripping, twisting, turning, manipulating of objects with the non-dominant left hand . . . . [W]ould that individual be capable of any of Ms. Welch's past employment, either as she performed it or as it is usually performed in the national economy?

VE: As she described the inspector job, it sounds like something that she would be able to do.

ALJ: As she performed it? As usually performed?

VE: As usually performed. She described it on, initially, that there was heavier weight lifting of 30-40 pounds, and then as toward the end of the job, she didn't do that part, but sometimes she did, so as typically performed.

. . .

ALJ: Now, I want you to assume an individual of the same age, education, and past work experience had limitations consistent with the testimony presented. With those limitations, would that individual be capable of any of Ms. Welch's past employment?

VE: No.

ALJ: Or any other job?

VE: No.

ALJ: Why would that be?

VE: I see it's stated that she could not do the job due to the problem with her hands, that her manipulative abilities did not allow her to meet those job demands, and that would be the primary problem.

[Filing No. 14-2 at 54-55.]

The VE contradicted herself when she first said that the hypothetical individual could do the inspector job *as Ms. Welch had described it*, but then said she could do it as usually or typically performed. Further, instead of explaining why the hypothetical individual could do the inspector job as it is usually performed, the VE explained that Ms. Welch – not the hypothetical

7

individual – may not be able to perform her particular past job as an inspector because of the heavier lifting.

The VE's testimony is even more puzzling when in response to the second line of questioning, she testified that a hypothetical individual with limitations consistent with the testimony presented *would not* be capable of performing any job. This suggests that the VE thought the ALJ's first hypothetical did not accurately describe Ms. Welch's limitations, although once again the VE's explanation does little to shed light on her reasoning. The VE testified that her primary concern was the statement that Ms. Welch "could not do the job due to the problem with her hands." [Filing No. 14-2 at 54-55.] However, it is not clear to what job the VE is referring. In her testimony, Ms. Welch referred to two different prior jobs to which her hand problems would prevent her from returning: an inspector and a mug decorator. [Filing No. 14-2 at 36-37.] Despite the lack of clarity and consistency in the VE's testimony, the ALJ did not ask follow-up questions to remedy any confusion.

Ultimately, the ALJ's two-sentence summary of his past relevant work determination does not fully analyze Ms. Welch's previous relevant work and sheds no light on what he bases his conclusion. If his decision was based on the VE's answer to the first hypothetical, he provides no information as to why he found that answer more compelling than the VE's contradictory answer to the second hypothetical. If the ALJ's decision was not based on the VE's testimony, then he provides no other basis for it. As previously noted, the ALJ's determination about the claimant's ability to perform her past work has "far-reaching implications and must be developed and explained fully in the disability decision." Novak, 180 F. Supp. 2d at 997 (citing SSR 82-62). "[E]very effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.* That did not happen here. Because of the ALJ's

failure to build an accurate and logical bridge connecting the evidence to his conclusion that Ms. Welch could perform past relevant work, he committed reversible error.[3]

**B. Mental Impairment**

Although the Court has already found that the ALJ committed reversible error, it will briefly address other arguments raised by Ms. Welch.

Ms. Welch argues that the ALJ erred in his assessment of her alleged mental impairment. [Filing No. 21 at 23-27.] First, Ms. Welch says that the ALJ erred by failing to complete the Psychiatric Review Technique Form. This argument is misguided because that form has not been required since 2000 when the regulations changed to instead require ALJs to simply document in their decisions their application of the psychiatric review technique. *See* 65 FR 50746; 20 C.F.R. § 404.1520a. The current version of 20 C.F.R. § 404.1520a outlines the "special technique" an ALJ must use to evaluate the severity of mental impairments.

First, the ALJ must evaluate a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [she] ha[s] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). Instead of laying out evidence to support or negate the presence of a medically determinable mental impairment, the ALJ in this case described his reasons for finding that Ms. Welch does not have a *severe* mental impairment. [Filing No. 14-2 at 12-13.] His opinion never uses the phrase "medically determinable mental impairment," but it does imply that he believes Ms. Welch has a mental impairment of some kind, although not severe. [*See* Filing No. 14-2 at 13-14.]

---

[3] Ms. Welch makes a related argument that the ALJ misclassified her prior relevant work as that of an "Inspector" when it would more appropriately be characterized as that of a "Hand Packer." [Filing No. 21 at 22-23.] Because the Court has already found reversible error in the ALJ's past relevant work determination, it need not resolve this argument. On remand, Ms. Welch will have another opportunity to question a VE regarding the proper classification of Ms. Welch's prior relevant work.

If there is a medically determinable mental impairment, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(b)(2), (c)(3). The first three areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The fourth area is rated on a four-point scale: none, one or two, three, and four or more. *Id.* If the ALJ rates the first three areas as "none" or "mild" and the fourth area as "none," he may generally conclude the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). In this case, the ALJ concluded his assessment of Ms. Welch's mental impairment by finding that

> the claimant is not limited by her mental impairment in her ability to perform activities of daily living and maintain social functioning. She is, at most, only mildly limited in her ability to sustain concentration, persistence, or pace. There is no evidence in the record to support a finding that the claimant has experienced any episodes of decompensation, which have been of extended duration, since the alleged onset date.

[Filing No. 14-2 at 14.] The ALJ did not elaborate on what evidence he considered in making each of these findings. Normally, assessing the functional limitations caused by a mental impairment is a complex process that requires consideration of multiple issues and all relevant evidence. *See* 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). "The decision must elaborate on significant medical history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the mental impairment's severity." *Craft*, 539 F.3d at 675.

The ALJ in this case did not follow the proper steps of the special technique. Rather than looking first for a "medically determinable impairment," he looked for a "severe" mental

10

impairment. Finding no *severe* mental impairment but apparently *some* mental impairment, the ALJ quickly disposed of the rankings requirement in three sentences with no insight into how he determined those rankings. The special technique's multiple steps are designed to help an ALJ determine the severity of a mental impairment. He cannot first come to the conclusion that a mental impairment is not severe, and then use that conclusion to rank the limitations as "none" or "mild." The special technique requires a detailed explanation of rankings first, and then those rankings form the basis for determining if the impairment is severe.

In some cases, but not all, failure to explicitly follow the steps of the special technique may be harmless error. *Craft*, 539 F.3d at 675. If, for example, an ALJ used an older version of the regulation but the outcome would be the same under the new regulation, the Court may find the error harmless. *See, e.g.*, *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003). However, in this case, it is not clear if or how proper use of the special technique might have changed the ALJ's Step Two analysis. A different outcome at Step Two could have affected the ALJ's RFC determination. Therefore, the Court cannot conclude that the ALJ's error was harmless.[4]

---

[4] Ms. Welch makes a second, related argument that the ALJ failed to incorporate the special technique findings into his assessment of the claimant's RFC and into his questioning of the VE. [Filing No. 21 at 26-27.] While this argument may have merit, it is not necessary to address it in detail because the Court has already found reversible error with regard to the ALJ's application of the special technique. On remand, the ALJ will be required to properly assess Ms. Welch's claimed mental impairments using the special technique. Should that assessment lead to a different determination, the new determination should be considered when forming the new RFC in accordance with 20 C.F.R. § 404.1545 and reflected in hypotheticals posed to the VE. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record.").

### C. Weight and Credibility

Finally, Ms. Welch argues that the ALJ did not give proper weight to the opinion of her treating physician, Dr. Jerry Whetzel, and also improperly discounted Ms. Welch's credibility. [Filing No. 21 at 27-29.]

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. § 404.1527(d)(2)). A claimant, however, is not entitled to disability benefits simply because a physician finds that she is "disabled" or "unable to work," *Clifford*, 227 F.3d at 870, since the ultimate issue of disability is reserved for the ALJ, 20 C.F.R. § 404.1527(e).

In this case, the ALJ accepted the portion of Dr. Whetzel's opinion that Ms. Welch was not limited in her ability to sit, stand, or walk, but that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl. [Filing No. 14-2 at 16.] The ALJ noted that this part of Dr. Whetzel's opinion was consistent with the opinion of a neurologist that Ms. Welch saw, which the ALJ assigned "great weight." [Filing No. 14-2 at 16.]

The ALJ rejected Dr. Whetzel's conclusion that Ms. Welch could only lift ten pounds and only handle and finger occasionally. [Filing No. 14-2 at 16.] The ALJ need only minimally articulate his reasons for assigning lesser weight to a treating source opinion, *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), and the ALJ met that burden with regard to this issue. Specifically, the ALJ found no other evidence in the record to support a finding that Ms. Welch was unable to lift more than ten pounds, that her ability to perform fingering movements was significantly limited, or that she could only occasionally perform handling movements. [Filing No. 14-2 at 16.] The ALJ found no evidence of muscle atrophy in Ms. Welch's hands or arms, or

12

of reflex abnormalities or muscle strength deficits in her upper extremities. [Filing No. 14-2 at 16.] He noted that there was radiological evidence of only mild osteoarthritis in Ms. Welch's hand. [Filing No. 14-2 at 17.] Generally, the more consistent an opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. § 404.1527(c)(4). The ALJ also noted that although Dr. Whetzel gave Ms. Welch significant limitations in lifting, carrying, handling, and fingering, his notes focused mainly on her alleged sleep problems rather than on her hand and arm problems. [Filing No. 14-2 at 16-17.] The ALJ may take Dr. Whetzel's lack of explanation for his opinion into account when deciding how much weight to give the opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The Court concludes that the ALJ's decision not to grant controlling weight to this portion of Dr. Whetzel's opinion was reasonable and more than minimally articulated.

Next, Ms. Welch argues that the ALJ erroneously discredited her claims of depression because he based that decision on the fact that she had not sought medical treatment. [Filing No. 21 at 28.] According to Ms. Welch, she did not seek treatment for depression because her insurance did not cover it. [Filing No. 21 at 29; Filing No. 14-11 at 87.] An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . ." SSR 96-7p.

In the present case, the ALJ acknowledged Ms. Welch's explanation for not seeking mental health treatment but then noted that "there is no evidence that she sought such treatment at free or reduced-fee mental health clinics." [Filing No. 14-2 at 12.] While this Court believes the ALJ should not necessarily have taken Ms. Welch's lack of medical treatment for depression

13

into consideration given her explanation for not receiving such treatment, the ALJ also based his credibility determination on several other factors. Specifically, he discussed Ms. Welch's full range of daily activities, her relatively normal mental status examination findings, her unremarkable presentation at various doctors' offices, and the opinions of State Agency psychologists. [Filing No. 14-2 at 12-13.] Ms. Welch does not challenge those findings.

An ALJ's credibility determination is entitled to special deference, *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004), and the Court will not disturb a credibility finding "unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). Because the ALJ's credibility determination in this case contains specific reasons supported by evidence in the record, the Court does not find it to be patently wrong. That said, on remand, the ALJ should take care to reevaluate the weight and credibility of the evidence presented at a new hearing.

**D. Remedy**

Ms. Welch asks this Court to reverse the ALJ's decision and award benefits since she has already had two administrative hearings and years have passed since her application for benefits in January 2009. [Filing No. 21 at 29-30.]

When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe*, 425 F.3d at 355. An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

The Court has found that the ALJ erred by (1) failing to properly analyze Ms. Welch's ability to do her past relevant work, and (2) failing to follow the proper steps of the special psychiatric review technique. Both of these involve factual issues, and the Court cannot conclude that once they are resolved only one supportable conclusion exists. Accordingly, remand is

14

proper.  Given that this is the second time Ms. Welch's case has been remanded and she filed her application for benefits more than five years ago, the Court directs the Commissioner to expedite review of her pending claim.

### IV. Conclusion

The ALJ's denial of relief is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion. The Court directs the Commissioner to expedite review of Ms. Welch's pending claim on remand.


Distribution:

John David Hensley
HENSLEY & ASSOCIATES
jhensley@hensleylegal.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov